(No. 19935.—

IDA C. PEARCE, Defendant in Error, *vs.* ARTHUR F. OSTER-
MAN *et al.* Plaintiffs in Error.

*Opinion filed February 18, 1931.*

176 .

S. R. KENWORTHY, (CHARLES S. CARSTROM, of counsel,) for plaintiffs in error.

JAMES F. MURPHY, for defendant in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

Defendant in error, Ida C. Pearce, filed her bill in the circuit court of Rock Island county against Arthur F. Osterman, the State Bank of Rock Island, Percival A. Eklund and Irene M. Eklund to correct the description of a certain lot in a deed executed by defendant in error and her husband to Osterman. The cause was heard by the chancellor, a decree was entered as prayed, and a writ of error was prosecuted from this court to review the decree.

It is insisted by plaintiffs in error that the evidence is not sufficient, under the general rules of law pertaining to the reformation of written instruments, to justify the decree rendered. Equity will reform a deed upon the ground of a mistake where the mistake was one of fact and not of law, the proof clearly and convincingly shows that a mistake was made and that it was mutual and common to both parties to the instrument. (*Skelley* v. *Ersch,* 305 Ill. 126.) Where contracting parties have reduced their agreement to writing it is presumed to express their mutual intention, and that presumption does not yield to any other conclusion unless the evidence of a mistake is of a strong and convincing character. (*Christ* v. *Rake,* 287 Ill. 619.) Equity will reform a deed against subsequent purchasers or mortgagees unless they are innocent purchasers or mortgagees without notice of the mistake. It is not necessary that they have actual notice of the mistake. If they have knowledge of such facts as might and ought to put a prudent man on inquiry as to the title they are chargeable with notice of all facts to which diligent inquiry and investigation will lead. (*Mason* v. *Mullahy,* 145 Ill. 383.) Possession is sufficient notice to put a purchaser or mortgagee on in-

quiry. (*Druley* v. *Adam*, 102 Ill. 177; *Phillips* v. *Pitts &* *Co.* 78 id. 72.) Negligence to bar the reformation of a deed in case of mutual mistake must be so gross as to amount to the violation of a positive legal duty. Estoppel does not arise where the act of the party sought to be estopped was due to ignorance by reason of an innocent mistake. *Joss* v. *Illinois National Guard*, 257 Ill. 138; *Wright* v. *Stice*, 173 id. 571; *Deischer* v. *Price*, 148 id. 383; *Tillotson* v. *Mitchell*, 111 id. 518.

The evidence shows that in the spring of 1926 defendant in error was the owner of lots 9, 10, 11 and 12 in Dack's Fourth addition to the city of Rock Island. These lots were on the north side of Twenty-first avenue, formerly known as Aiken street. They were numbered from east to west, the east lot being numbered 9. Lot 9 was 45 feet wide, lot 10 at the south end was 47.2 feet wide and at the north end it was 47.42 feet wide, and lots 11 and 12 were each 47.5 feet wide. All of the lots were 150 feet long north and south. There was an alley on the east side of lot 9, an alley on the west side of lot 12 and an alley in the rear of all of the lots. The lots were surrounded by three alleys and one street. On lot 9 there was a small dwelling house with a garage northwest of the house, on lot 11 there was a two-story frame house, and lot 10 was vacant. The surface of lots 10 and 11 was about three feet higher than the surface of lot 9. Lot 10 near the east side was terraced down to the level of lot 9. The bottom of this terrace at the south end was 8.4 feet west of the east line of lot 10 and it was 13.5 feet west of the east line of lot 10 at the north end. This space, being 8.4 feet north and south at the front end and 13.5 feet east and west at the north end of the lot, had been used since 1922 as a driveway in connection with lot 9 and led to a garage which was located at the north end of this driveway, and the driveway and garage were almost entirely upon the east side of lot 10. There was no means of access from lot 9

to lot 10 except over this terrace, and there was, in fact, no communication between them. In the rear of the house on lot 11 was a garage which faced the west, and access to it was across the north end of lot 12 and the alley north of these lots.

This whole controversy is over the conveyance of the strip used as a driveway. Defendant in error and her husband conveyed all of lots 10 and 11 to Osterman, and the bill was filed to exclude the driveway from that deed. The title to all of this property was in defendant in error, but the negotiations for its sale were conducted by Richard C. Pearce, the husband of defendant in error. They wanted to sell all of this property because they intended to move to California on account of the husband's health. On April 19, 1926, a contract of sale was entered into between defendant in error and Eklund for the small house on lot 9. Eklund claims that his contract was to include lot 9 and all of lot 10 east of the bottom of the terrace, and he entered into possession of this property on June 1, 1926, including all of lot 9 and the strip in question, and he has been in possession of all of said real estate since that time. In May, 1926, Pearce sold the big house on lot 11 to Osterman for $6500. Osterman paid $100 on May 8, 1926, to bind the bargain and received a written receipt therefor, and later a written contract of sale was executed in duplicate. The copy belonging to defendant in error was left with the Central Trust and Savings Bank of Rock Island, where Osterman was to make his payments on the contract. On June 9, 1926, by agreement of the parties defendant in error borrowed $4000 from said bank and Pearce and his wife and Osterman executed a mortgage on lots 10 and 11 to secure this payment. After this contract was executed defendant in error and her husband moved to California. Osterman continued his payments on the contract until he owed a balance of about $2500, which amount he borrowed on December 9, 1926, from the State Bank of Rock Island,

secured by a mortgage on the real estate. Upon the payment of the balance due, defendant in error and her husband made a deed of conveyance to Osterman, but they claim that by mistake the deed covered not only lot 11 but all of lot 10, whereas they only intended to convey lot 11 and that part of lot 10 west of the bottom of the terrace. After the deed was executed Osterman did not take possession of the driveway or attempt to do so. In fact, he did not know until some time in May, 1927, that his deed covered the driveway.

Richard C. Pearce testified that in his negotiations with Osterman he did not describe the premises by lot numbers but only described them as his "big place." Before the sale Osterman asked him where the east line was, and Pearce told him it was at the foot of the terrace. Pearce testified that about May 25, 1927, he and his wife had a conversation with Osterman at the bank in Rock Island. Osterman said that he had the premises surveyed and his line ran to the middle of the driveway. Pearce told him that he (Osterman) knew they only sold him to the foot of the terrace. Osterman replied that he thought he was buying only to the bottom of the terrace but found that his deed conveyed to the middle of the driveway, and he said he was very much surprised; that Pearce had made a mistake and he was getting more than he expected to get. Pearce testified that he had a similar conversation with Osterman a day or two later. Mrs. Pearce testified to substantially the same facts which were testified to by her husband with reference to the conversation with Osterman at the bank.

Eklund testified that he took possession of lot 9 and the driveway east of the foot of the terrace on June 1, 1926, and has been in undisputed possession since that time. He rented the garage to a tenant, who used the driveway to get to the garage, and that Osterman used the alley in the rear and a part of lot 12 to get to his garage. He testified that in May, 1927, Osterman asked him if he knew the

garage was on Osterman's lot. Eklund told him that he (Eklund) had bought the driveway and garage, and that he was in possession and would continue in possession. Osterman said he was very much surprised to find such a condition existing; that he never had any idea his lot ran east of the foot of the terrace, and that he had just discovered that fact. Eklund testified that two months later Osterman asked him if by using the driveway Eklund was really saying that he owned that ground, and Eklund told him that as far as that ground was concerned he owned it. Eklund said he had title, and his contract and deed did not describe all the land he bought. He testified that when he bought lot 9 he asked Pearce about the lot lines; that they walked around the lines, and the driveway was included in the land which he purchased.

Osterman testified that before he bought this property he lived in the neighborhood and knew the conditions. He examined an atlas or plat to see the dimensions of the lots which he purchased. He denied that he had a conversation with Pearce about May 1, 1926, and that Pearce told him the east line of his property was at the foot of the terrace. He testified that he bought all of lots 10 and 11. He denied the conversation with Pearce and his wife in May, 1927, at the bank in Rock Island. He testified he first discovered where the east line of lot 10 was about a year after he purchased it; that the garage was in the possession of Eklund when he moved into the house which he purchased; that he only used the driveway on one occasion when he put some coal on the terrace in the fall of 1926; that when he purchased the property he thought he was buying lots 10 and 11 but at that time he did not know where the lines were; that he took possession of lots 10 and 11 west from the foot of the terrace, and that he did not think at the time he purchased that the driveway was included in lot 10.

It is very apparent from the evidence that defendant in error and her husband, at the time these sales were made, did not know the exact location of the east line of lot 10. They apparently thought the terrace marked the east line and that lot 10 extended to the bottom of the terrace. As a result of this error the land purchased by Osterman was improperly described as lots 10 and 11 in the receipt given to him in payment of the $100, in his contract of sale, in his deed, in the mortgage given by him to the bank, and in the mortgage given by defendant in error and her husband to the bank. The land sold to Eklund was also erroneously described as lot 9 and included no part of lot 10. Pearce testified that he did not sell the land to Osterman by numbers but that he pointed out to him the boundaries and told him that his purchase extended to the bottom of the terrace. Eklund testified that when he purchased lot 9 Pearce informed him that his purchase extended to the bottom of the terrace. This is all denied by Osterman, who claims that he purchased lots 10 and 11 and nothing else. We are of the opinion that the physical conditions of this property corroborate the testimony of Pearce and Eklund rather than the testimony of Osterman. The small house was located on lot 9. The driveway and garage which were used in connection with this house were located on lot 10. The garage used in connection with lot 11 was north and west of that house. It is apparent that the garage and driveway were constructed for the purpose of being used in connection with lot 9. It is almost impossible to conceive that the owner of both of these pieces of property would sell lots 10 and 11 including the driveway and garage to one party, and would sell lot 9 to another party without any garage or driveway connected with it. The most reasonable conclusion to be drawn from the evidence is that there was a mistake in the execution of the deed; that defendant in error and her husband intended to convey lot 9

and the driveway and garage to Eklund and intended to convey lot 11 and that part of lot 10 west of the bottom of the terrace to Osterman, and that a mutual mistake was made in the deeds and other instruments. Eklund was in possession of the driveway, and all rights of other defendants accruing after June 1, 1926, were subject to his rights.

The chancellor was not in error in entering a decree correcting the description in the deed so as to make it represent the correct intention of the parties, and the decree is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Decree affirmed.*